**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRESTONE FINANCIAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| HEROES LOGISTICS, INC., JONCE | ) | Amount claimed: $112,104.24, plus |
| STRUMENIKOVSKI, UAL EXPRESS, INC. | ) | prejudgment interest at the rate |
| and NATASA KUZMANOVA a/k/a NATASHA | ) | twelve percent (12%) per annum and |
| KUZMANOVA, | ) | attorneys' fees and costs, plus |
| Defendants. | ) | punitive damages |

## VERIFIED COMPLAINT

NOW COMES FIRESTONE FINANCIAL, LLC ("FIRESTONE"), by and through counsel, and for its Verified Complaint against HEROES LOGISTICS, INC. ("Heroes"), JONCE STRUMENIKOVSKI ("Strumenikovski"), UAL EXPRESS INC. ("UAL"), and NATASA KUZMANOVA A/K/A NATASHA KUZMANOVA ("Kuzmanova") (collectively the "Defendants"), states as follows:

## PARTIES

1.     FIRESTONE is a limited liability company registered under the laws of the State of Massachusetts, with its principal place of business located at 117 Kendrick St., Suite 200, Needham, Massachusetts 02495. FIRESTONE's sole member is Berkshire Bank, a bank chartered under the laws of the Commonwealth of Massachusetts.  Berkshire Bank's principal place of business is in Pittsfield, Massachusetts.

2.     Heroes is an Illinois corporation with its principal place of business located at 4629 Yackley Ave., Apt 8, Lisle, Illinois 60532. Per the records of the Illinois Secretary of State, Heroes'

President is Strumenikovski. At all relevant times, Strumenikovski made all decisions on behalf of Heroes pertaining to the allegations in this Complaint.

3.      Strumenikovski is a citizen of the State of Illinois, residing at 4629 Yackley Ave., Apt 8, Lisle, Illinois 60532.

4.      UAL is an Illinois corporation with its principal place of business located at 669 London Square, Hoffman Estates, IL 60169. Kuzmanova is the President and Secretary of UAL. At all relevant times, upon information and belief, based on her status as the only corporate officer listed with the Illinois Secretary of State, Kuzmanova made all decisions on behalf of UAL pertaining to the allegations of the Complaint.

5.      Upon information and belief, Kuzmanova is a citizen of the State of Illinois, residing at 669 London Square, Hoffman Estates, Illinois 60169.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) insomuch as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because a substantial part of the events or omissions giving rise to Firestone's claims occurred in this judicial district, and because the Defendants reside in this judicial district.

## FACTS COMMON TO ALL COUNTS

8.      This matter pertains to Heroes' and Strumenikovski's breach of contracts relating to the financing of two trucks for Strumenikovski's trucking business. Without Firestone's consent, Heroes, through Strumenikovski, transferred the Trucks to UAL, controlled by

2

Kuzmanova. The Defendants refuse to return the Trucks to Firestone, causing Firestone to include claims in its Complaint for conversion against Heroes, UAL, Strumenikovski and Kuzamanova. Firestone is also suing for breach of contract, replevin and detinue.

**The First Agreement**

9.      On or about July 27, 2018, Firestone and Heroes entered into Equipment Finance Agreement XXX9886 (the "First Agreement"), wherein Firestone, as lender, financed Heroes' acquisition of one (1) 2016 Freightliner Cascadia 125SLP with VIN No. 3AKJGLD51GSGU0895 (the "First Truck"). Heroes, as borrower, granted Firestone a first priority security interest in the same. A true and correct copy of the First Agreement is attached hereto as Exhibit 1. A true and correct copy of the Certificate of Title reflecting Firestone's lien in the First Truck is attached hereto as Exhibit 2.

10.      To induce Firestone to enter into the First Agreement, Strumenikovski personally guaranteed Heroes' obligations to Firestone under the First Agreement (the "First Guaranty") which is attached hereto as Exhibit 3.

11.      Pursuant to the First Agreement, Heroes agreed to make sixty (60) consecutive monthly payments of $1,555.14, plus applicable fees and costs. *See* Exhibit 1, p. 1.

12.      Firestone further perfected its security interest in the First Truck by filing a UCC-1 Financing Statement with the Illinois Secretary of State. A true and correct copy of the UCC-1 Financing Statement reflecting Firestone's first priority lien in the First Truck is attached hereto as Exhibit 4.

**The Second Agreement**

13.     On or about July 27, 2018, Firestone, as lender, and Heroes, as borrower, entered into Equipment Finance Agreement XXX9887 (the "Second Agreement") (collectively with the First Agreement, the "Agreements"), wherein Firestone financed Heroes' acquisition of one (1) 2016 Freightliner Cascadia 125SLP with VIN No. 3AKJGLD56GSGU1007 (the "Second Truck") (collectively with the First Truck, the "Trucks").  Heroes granted Firestone a first priority security interest in the same. A true and correct copy of the Second Agreement is attached hereto as Exhibit 5. A true and correct copy of the Certificate of Title reflecting Firestone's lien in the Second Truck is attached hereto as Exhibit 6.

14.     To induce Firestone to enter into the Second Agreement, Strumenikovski personally guaranteed the obligations of Heroes under the Second Agreement (the "Second Guaranty") (collectively with the First Guaranty, the "Guaranties").  A true and correct copy of the Second Guaranty is attached hereto as Exhibit 7.

15.     Pursuant to the Second Agreement, Heroes agreed to make sixty (60) consecutive monthly payments of $1,555.14, plus applicable fees and costs.  *See* Exhibit 5, p. 1.

16.     Firestone further perfected its security interest in the Second Truck by filing a UCC-1 Financing Statement with the Illinois Secretary of State.  A true and correct copy of the UCC-1 Financing Statement reflecting Firestone's first priority lien in the Second Truck is attached hereto as Exhibit 8.

**Payment Default**

17.     Firestone has performed all of its obligations under the Agreements.

4

18. Heroes defaulted under the Agreements by failing to make all the payments due under the Agreements.

19. As a result of Heroes' default under the First Agreement, the balance due to Firestone from Heroes is $56,052.12 as of June 16, 2020, after crediting Heroes for all payments received pursuant to the First Agreement.

20. As a result of Heroes' default under the Second Agreement, the balance due to Firestone from Heroes $56,052.12 as of June 16, 2020, after crediting Heroes for all payments received pursuant to the Second Agreement.

21. For the monies due under the Agreements, Firestone is entitled to pre-judgment interest at the contractual rate of twelve percent (12%) per annum continuing to accrue until judgment, or the maximum rate permitted by law. *See* Exhibit 1, ¶ 8; *see* Exhibit 5, ¶ 8.

22. Firestone is further entitled to attorneys' fees and costs pursuant to the Agreement. *Id.*

23. Firestone sent a demand for payment and return of the Trucks to Heroes and Strumenikovski.

24. Heroes and Strumenikovski failed and refused to respond to Firestone's demand.

25. Firestone estimates that the Trucks are worth approximately the same amount and have a combined fair market value of $88,242.00, depending on their condition.

### UAL Express Inc. and Kuzmanova

26. After Heroes and Strumenikovski defaulted under the Agreements for failure to make payments, Firestone attempted to recover the Trucks.

27. In attempting to recover the Trucks, Firestone learned that the Trucks are in UAL's possession.

28. Firestone contacted UAL and confirmed that the Trucks are in UAL's possession and that UAL is using the Trucks for its business operations. Firestone demanded the return of the Trucks from UAL by sending a demand letter to Kuzmanova and UAL, but UAL and Kuzamanova refuse to surrender the Trucks

29. Upon information and belief, based on UAL's admission to Firestone that it has possession of Trucks, Heroes, through Strumenikovski, transferred the Trucks to UAL. Heroes' transfer of the Trucks was without Firestone's prior knowledge or consent.

30. UAL knew or should have known of Firestone's liens and security interests in the Trucks at the time UAL took possession of the Trucks, because: 1) UAL could not take title to the Trucks, because Firestone's liens appear on the face of the titles and would appear on any title search for the Trucks; and 2) Firestone holds the titles.

31. UAL is using the Trucks in its business operations, diminishing the value of the Trucks.

32. Firestone sent a demand for payment and return of the Trucks to UAL.

33. UAL failed and refused to return the Trucks or pay for the Trucks.

**COUNT I**
**BREACH OF THE FIRST AND SECOND AGREEMENTS AGAINST HEROES LOGISTICS, INC.**

34. Firestone repeats and realleges paragraph 1 through 33 as though fully set forth herein.

35. Heroes defaulted under the Agreements by failing to make all payments when due.

36.     As a result of Heroes' breach of the Agreements, Firestone has suffered actual damages in the amount of $112,104.24, plus prejudgment interest at the rate of twelve percent (12%) per annum from the date of default through the date of judgment, plus attorneys' fees and costs.

WHEREFORE, Firestone respectfully requests that this Court enter Judgment in its favor and against Heroes in the amount of $112,104.24, plus prejudgment interest at the rate of twelve percent (12%) per annum from the date of default through the date of judgment, and attorneys' fees and costs, as well as all other and further relief which this Court deems just.

**COUNT II**
**BREACH OF GUARANTIES AGAINST JONCE STRUMENIKOVSKI**

37.     Firestone repeats and realleges paragraph 1 through 36 as though fully set forth herein.

38.     Under the Guaranties, Strumenikovski is indebted to Firestone for the amounts due to Firestone from Heroes under the First and Second Agreements.

39.     Strumenikovski has failed to pay this amount - $112,104.24, plus interest, attorney fees and costs - to Firestone.

40.     Accordingly, Strumenikovski has breached the First and Second Guaranty.

41.     Due to Strumenikovski's breach of the Guaranties, Firestone has suffered actual damages in the amount of $112,104.24, plus prejudgment interest at the rate of twelve percent (12%) per annum from the date of default through the date of judgment, plus attorneys' fees and costs.

WHEREFORE, Firestone respectfully requests that this Court enter Judgment in its favor and against Strumenikovski in the amount of $112,104.24, plus prejudgment interest at the rate of

twelve percent (12%) per annum from the date of default through the date of judgment, and attorneys' fees and costs, as well as all other and further relief which this Court deems just.

**COUNT III**
**CONVERSION AGAINST HEROES AND JONCE STRUMENIKOVSKI**

42.     Firestone repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

43.     Firestone has a right to the Trucks pursuant Firestone's liens.

44.     Firestone's lien interest in the Trucks is a property interest.

45.     The Agreements prohibit Heroes from transferring the Trucks to anyone without Firestone's written consent. *See* Exhibit 1, ¶ 7; *see* Exhibit 5, ¶ 7.

46.     Strumenikovski executed the Agreements on behalf of Heroes.

47.     Consequently, Strumenikovski had actual knowledge that Heroes' transfer of the Trucks without Firestone's written consent was not permitted.

48.     Heroes, through Strumenikovski, transferred the Trucks to UAL without Firestone's consent.

49.     By transferring the Trucks to UAL without Firestone's consent, Heroes and Strumenikovski intentionally deprived Firestone of its immediate right take physical possession of the Trucks, thereby negating Firestone's ability to mitigate its damages resulting from Heroes' breach of the Agreements.

50.     Firestone has an absolute and unconditional right to the immediate possession of the Trucks as a result of the payment default under the Agreements.

51.     Firestone has demanded possession of the Trucks from UAL and Kuzmanova, but UAL and Kuzmanova ignored Firestone's demand.

52.     Heroes and Strumenikovski wrongfully and without authorization allowed UAL and Kuzamanova to assume control, dominion, or ownership over the Trucks.

53.     The Fair Market Value of two (2) 2016 Freightliner Cascadia 125SLPs is $88,242.00, depending on their condition.

54.     Accordingly, Firestone has suffered actual damages in the amount of $88, 242.00 due to Heroes' and Strumenikovski's conversion of the Trucks. Moreover, Firestone is entitled to punitive damages of at least two times Firetone's actual damages because of Heroes' and Strumenikovski's intentional, wrongful conduct, as well as interest accruing from the date when Heroes and Strumenikovski tendered the Trucks to UAL and/or Kuzamanova.

WHEREFORE, Firestone respectfully requests that the Court enter judgment in its favor and against Heroes Logistics, Inc and Jonce Strumenikovski, jointly and severally, in the amount of $88,242.00, plus punitive damages of at least two times Firestone's actual damages, prejudgment interest, and attorneys' fees and costs, and such other and further relief as this Court deems just.

### COUNT IV
### REPLEVIN AGAINST UAL EXPRESS INC.
### UNDER 735 Ill. Comp. Stat. § 5/19-101

55.     Firestone repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

56.     This claim is brought pursuant to 735 ILCS § 5/19-101, et seq., made applicable to this proceeding pursuant to 28 U.S.C. § 1652, for the collateral is located in Illinois.

57.     Pursuant to the Agreements, Firestone has a first priority security interest in the Trucks.

58. UAL knew or should have known of Firestone's liens and security interests when it took possession of the Trucks from Heroes and Strumenikovski.

59. Firestone is entitled to possession of the Trucks.

60. Firestone has been unable to secure the Trucks by peaceful means.

61. UAL is wrongfully and unlawfully detaining the Trucks.

62. Firestone has made demand upon UAL for the return of the Trucks, but UAL has failed and refused to return same.

63. Firestone will suffer irreparable damages if the Trucks are not returned to Firestone.

64. Upon information and belief, the Trucks are located at 1245 E. Forest Ave., Des Plaines, IL 60018.

65. The Fair Market Value of two (2) 2016 Freightliner Cascadia 125SLPs is $88,242.00, depending on their condition.

66. The Trucks have not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of such plaintiff, or against him or her individually, nor seized under any lawful process against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against such plaintiff.

67. Due to UAL's wrongful detention of the Trucks, Firestone is entitled to a writ of replevin directing the US Marshal, or any other designated officer, to use all necessary force to repossess the Trucks, or any portion thereof, from UAL, located at 1245 E. Forest Ave., Des Plaines, IL 60018, or wherever they may be found. To the extent the Trucks are not found, Firestone is entitled to a judgment in the amount of the fair market value of the Trucks.

WHEREFORE, Firestone respectfully requests that this Court enter a writ directing the US

Marshal, or any other designated officer, to use all necessary force to repossess the Trucks, or any portion thereof, from UAL, located at 1245 E. Forest Ave., Des Plaines, IL 60018, or wherever they may be found, and enter judgment against UAL, for the value of any Trucks not so returned, plus attorneys' fees and costs, as well as all other and further relief which this Court deems just.

## COUNT V
## CONVERSION AGAINST UAL EXPRESS INC. AND KUZMANOVA

68.     Firestone repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

69.     Firestone has liens on the Trucks pursuant to the Agreements that appear on the Certificates of Title for the Trucks.

70.     Firestone has a right to the Trucks pursuant to Firestone's liens.

71.     Firestone's lien interest in the Trucks is a property interest.

72.     UAL and Kuzmanova were aware, or should have been aware, of Firestone's liens at the time UAL and Kuzmanova took possession of the Trucks.

73.     By retraining the Trucks after Firestone's demand for their return, UAL intentionally deprived Firestone of the ability to repossess the Trucks and to mitigate Firestone's damages resulting from Heroes' breach of the Agreements.

74.     Firestone has an absolute and unconditional right to the immediate possession of the Trucks as a result of the payment default under the Agreements.

75.     Firestone has demanded possession of the Trucks from UAL and Kuzmanova.

76.     UAL and Kuzmanova wrongfully and without authorization assumed control, dominion, or ownership over the Trucks.

77. The Fair Market Value of two (2) 2016 Freightliner Cascadia 125SLPs is $88,242.00, depending on their condition.

WHEREFORE, Firestone respectfully requests that the Court enter judgment in its favor and against UAL Express Inc. and Kuzmanova, jointly and severally, in the amount of $88,242.00, plus punitive damages of at least two (2) times Firestone's actual damages, prejudgment interest, and attorneys' fees and costs, and such other and further relief as this Court deems just.

**COUNT VI**
**UNJUST ENRICHMENT AGAINST UAL EXPRESS INC.**

78. Firestone repeats and realleges paragraphs 1 through 77 as though fully set forth herein.

79. UAL controls the Trucks, and uses the Trucks in its business operations.

80. UAL is exercising unlawful dominion and ownership of the Trucks by using the Trucks for its benefit.

81. UAL has been unjustly enriched at Firestone's expense by retaining the fair market value of the Trucks, without compensating Firestone.

82. Accordingly, Firestone has been damaged in an amount equal to the fair market value of the Trucks, which is $88,242.00, or alternatively, to the extent the Trucks are ever returned by UAL to Firestone, for $3,010 per month for every month the Trucks have been in UAL's possession (or the possession of its agents).

WHEREFORE, Firestone respectfully requests that the Court enter judgment in its favor and against Defendant UAL Express Inc., in the amount of $88,242.00 or such other amount as Firestone proves, plus interest, and costs; and grant Firestone such other and further relief this Court deems just.

## COUNT VII
## DETINUE AGAINST UAL EXPRESS INC.

83.     Firestone repeats and realleges paragraphs 1 through 82 as though fully set forth herein.

84.     The Trucks are in UAL's possession and control.

85.     UAL is wrongfully retaining possession of the Trucks, because UAL was aware of Firestone's liens and security interests when it came into possession of the Trucks from Heroes and Strumenikovski.

86.     Firestone's right to possession of the Trucks is superior to the rights UAL.

87.     Firestone is entitled to an order directing UAL to turn over the Trucks within seven (7) calendar days, or such other reasonable time period as the Court may determine.

WHEREFORE, Firestone respectfully requests that the Court enter an order compelling UAL Express Inc. to surrender the Trucks to Firestone at a place and time directed by Firestone within seven (7) days of this Court's entry of judgment.

FIRESTONE FINANCIAL, LLC

By:     /s/ D. Alex Darcy
        D. Alexander Darcy (ARDC # 6220515)
        Joseph Ramos (ARDC # 6321350)
        ASKOUNIS & DARCY, PC
        444 North Michigan Avenue
        Suite 3270
        Chicago, IL 60611
        (312) 784-2400 (t)
        (312) 784-2410 (f)
        adarcy@askounisdarcy.com
        jramos@askounisdarcy.com

13

## VERIFICATION

Under penalties as provided by law, the undersigned certifies that the statements set forth in the Verified Complaint for Replevin, Detinue, Conversion, and Money Damages are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Steven Principi
VP, Portfolio Management
Firestone Financial LLC

Subscribed and sworn to before me
this __3__ day of __November__, 2020.

NOTARY PUBLIC

**JANIEVA MALLORY**
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 19, 2024

14



**FIRESTONE FINANCIAL**
A Berkshire Bank Company

START DATE: **'JUL 2 7 2018**   *Equipment Finance Agreement ("Agreement")*AGREEMENT NO.

Send Account Inquiries and Payments to: FIRESTONE FINANCIAL, LLC 117 Kendrick St STE 200 • Needham, MA 02949

The words **Debtor, you** and **your** refer to Customer. The words **Secured Party, we, us,** and **our** refer to **FIRESTONE FINANCIAL, LLC.**

### CUSTOMER INFORMATION

| FULL LEGAL NAME OF BUSINESS/PERSON: Heroes Logistics, Inc. | STREET ADDRESS: 4629 Yackley Ave Apt 8 | |
|---|---|---|
| CITY: Lisle | STATE: IL ZIP: 60532 | |
| PHONE: (630) 788-8875 | FAX: | E-MAIL: |
| EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE) : | STREET ADDRESS: | |
| CITY: | STATE: ZIP: | |
| BILLING ADDRESS (IF DIFFERENT FROM ABOVE) : | STREET ADDRESS: | 4629 Yackley Ave Apt 8 |
| CITY: Lisle | STATE: IL ZIP: 60532 | |

### EQUIPMENT:
SEE SCHEDULE A

### PAYMENTS & TERMS

| AMOUNT FINANCED | FIRST PAYMENT DUE DATE | PAYMENTS DUE ON | Final Payment Due Date |
|---|---|---|---|
| $74,377.50 | August 27, 2018 | 27 day of each month, until paid in full | July 27, 2023 |
| **Number of Payments** 60 | | **Payment Amount** $1,555.14 | |

## THIS AGREEMENT IS NONCANCELABLE AND IRREVOCABLE AND CANNOT BE TERMINATED.

1. **AGREEMENT:** For business purposes only, you have requested that we finance the purchase price of the goods and/or services listed and described in this Agreement (the "Equipment"), and we agree to finance the purchase price of the Equipment under the terms and conditions of this Agreement. The goods or services comprising the Equipment may include licensed software. You agree to all of the terms and conditions in this Agreement, and you acknowledge and agree that this Agreement supersedes any terms or conditions of any purchase order or invoice whenever and by whomever delivered. You authorize us to correct or insert missing Equipment identification information. This Agreement becomes valid upon execution by both you and us and will start on the date we pay the supplier of the Equipment ("Start Date").

2. **PAY PROCEEDS AUTHORIZATION:** You hereby authorize and instruct us to advance funds as follows:

| Name and Address | Reference | Payment Amount | |
|---|---|---|---|
| Compass Truck Sales, LLC 15W580N Frontage Road Burr Ridge, IL 11655 | Puruchase Agreement #12121 | $73,882.50 | |
| Firestone Financial, LLC 117 Kendrick Street Suite 200 Needham, MA 02494-2728 | Loan Processing Fee | $495.00 | |
| | Total: | $74,377.50 | |

3. **DELIVERY AND INSTALLATION:** You hereby acknowledge and agree that all of the Equipment has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes related to this Agreement, including your payment obligations to us, regardless of any delay, failure, non-acceptance, loss, damage, claim, or other issue you may have or that may arise in respect of the Equipment or any supplier, vendor, employee, carrier, representative, agent, reseller, or service provider. You hereby authorize us to advance all of the funds in accordance with this Agreement and to start billing you as provided in this Agreement. You represent and warrant that all down payments, tax, freight, installation, or other charges or fees (each an "Additional Amount") not included in the Amount Financed have been paid in full with respect to all of the Equipment. If you fail to pay any Additional Amount, then without limiting any of our rights and remedies, we reserve the right to pay the Additional Amount on your behalf and add it to your Amount Financed or invoice you separately. Unless included in the Amount Financed, you agree to reimburse us when we request and to pay us a processing fee for each Additional Amount we pay on your behalf.

4. **PAYMENTS, TAXES AND FEES:** You will ensure that we receive all Payments when due. You are the owner of the Equipment, and you agree to pay when due all taxes (including personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Equipment or for its use or operation or upon this Agreement, each of which shall be considered an Additional Amount under Section 3 above. At our option, we may discharge taxes, liens or other encumbrances at any time levied or placed on the Equipment, and any expenditure by us any of those items will be considered an Additional Amount under Section 3 above. We will have the right to apply any sums received from you to any amounts due to us under this Agreement. If for any reason your check is returned for nonpayment, you will pay us a bad check charge of $35 or, if less, the maximum charge allowed by law. We may make a profit on any fees and other charges under this Agreement.

5. **MAINTENANCE AND LOCATION OF EQUIPMENT; SECURITY INTEREST:** At your expense, you agree to keep the Equipment: (1) in good repair, condition and working order, in compliance with applicable manufacturers' and regulatory standards; (2) free and clear of all liens and claims; and (3) only at the Equipment location listed above. You agree not to move the Equipment from the location listed above unless we agree in writing in advance. You are solely responsible for any data that may reside in the Equipment, including but not limited to hard drives, disk drives or any other form of memory. You shall cause all repairs required to maintain the Equipment to be made promptly by qualified and, if applicable, licensed providers. If you fail to maintain,

Page 1 of 4

**EXHIBIT**

Ex. 1



**FIRESTONE** FINANCIAL
A Berkshire Bank Company

Equipment as required by this Agreement, we may pay for the maintenance and preservation of the Equipment and any expenditure in this regard with be considered an Additional Amount under Section 3 above. Without our prior written consent, Debtor shall not make any alterations, additions or improvements to any Equipment detract from its economic value or functional utility. All additions and improvements made to any Equipment shall not be removed if removal would impair the Equipment's economic value or functional utility. You grant us a security interest in the Equipment together with all replacements, parts, repairs, additions, improvements, modifications, substitutions, and accessions incorporated therein or attached or made thereto and any and all proceeds of the foregoing, including, without limitation, insurance proceeds, to secure all amounts you owe to us under any agreement with us, and you authorize us to file all applicable financing statements (e.g., UCC-1) or be named on any vehicle title to evidence our security interest in the Equipment. You will not change your state of organization, headquarters or residence without providing prior written notice to us so that we may amend or file new financing statements. You will notify us within 30 days if your state of organization revokes or terminates your existence.

6. **COLLATERAL PROTECTION; INSURANCE; INDEMNITY; LOSS OR DAMAGE:** You agree to keep the Equipment fully insured against risk and loss, with us ISAOA ATIMA as lender's loss payee and/or additional insured, as determined by us in our sole discretion in an amount not less than the original Equipment cost until this Agreement is terminated. You will provide 10 days advance written notice to us of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. If you fail to comply with this requirement within 30 days after the start of this Agreement, we may charge you a monthly property damage surcharge of up to .0035 of the Equipment cost as a result of our credit risk and administrative and other costs, as would be further described on a letter from us to you. In addition, if you fail to maintain the insurance required by this Agreement, we may pay for insurance on the Equipment and any expenditure in this regard with be considered an Additional Amount under Section 3 above. We may make a profit on this program. We are not responsible for, and you agree to defend, indemnify, and hold us harmless from and against, any claim, loss, expense, liability, or injury, including reasonable attorneys' fees and costs, caused by or in any way related to the Equipment, including its delivery, installation, possession, use, condition, inspection, removal, or storage. While it is not anticipated that Secured Party shall have any liability for torts related to the Equipment, this indemnity provision covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, copyright, trademark, service mark, or other intellectual property infringement, misuse, or misappropriation claim. You are responsible for the risk of loss and any destruction of or damage to the Equipment. You agree to promptly notify us in writing of any loss or damage. If the Equipment is destroyed and we have not otherwise agreed in writing, you will immediately pay to us the unpaid balance of this Agreement as a lump sum, including all future Payments to the end of the term discounted to present value using a 2% annual rate. Any proceeds of insurance will be paid to us and credited, at our option, against any loss or damage. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to loss of or damage to the Equipment. All indemnities will survive the expiration or termination of this Agreement.

7. **ASSIGNMENT: YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR LEASE THE EQUIPMENT OR THIS AGREEMENT, without our prior written consent.** Without our prior written consent, you shall not reorganize or merge with any other entity or transfer all or a substantial part of your ownership interests or assets. We may sell, assign, or transfer this Agreement without notice. You agree that if we sell, assign or transfer this Agreement, our assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. **YOU AGREE THAT OUR ASSIGNEE WILL NOT BE SUBJECT TO ANY CLAIMS, DEFENSES, OR OFFSETS THAT YOU MAY HAVE AGAINST US.** You shall cooperate with us in executing any documentation reasonably required by us or our assignee to effectuate any such assignment. This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

8. **DEFAULT AND REMEDIES:** You will be in default if (a) you do not pay when due any Payment or other sum due to us or any of our affiliates or any material agreement with any other lender, (b) you make or have made any false statement or misrepresentation to us, (c) you or any guarantor of this Agreement dies, dissolves or terminates existence, (d) there has been a material adverse change in your or any guarantor's financial, business or operating condition, (e) any guarantor defaults under any guaranty for this Agreement, or (f) we in good faith deem ourselves insecure in respect of this Agreement as a result of a material adverse change in your financial condition or otherwise. If any part of a Payment is more than 10 days late, you agree to pay a late charge equal to 5% of the Payment which is late or if less, the maximum charge allowed by law. If you are ever in default, we may terminate this Agreement at any time and require that you immediately pay the unpaid balance of this Agreement as a lump sum, including all future Payments to the end of the term discounted to present value using a 2% annual rate. In addition to our other rights and remedies, we may recover default interest on any unpaid amount at the rate of 12% per year until paid. Concurrently and cumulatively, we may also use any or all of the remedies available to us under Article 9 of the UCC and any other law, including requiring that you: (1) deliver the Equipment to us to a location we specify; and (2) immediately stop using any Equipment. In addition, we will have the right, immediately and without notice or other action, to set-off against any of your liabilities to us any money, including depository account balances, owed by us to you, whether or not due. In the event of any dispute or enforcement of rights under this Agreement or any related agreement, you agree to pay our reasonable attorneys' fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee. If we take possession of the Equipment, you agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what you owe us under this Agreement and you will be responsible for any deficiency after such application. YOU AGREE THAT WE WILL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing any rights at a later time. You agree that your rights and remedies are governed exclusively by this Agreement. Your sole remedy if we collect interest in excess of the maximum allowed by law is a refund of the excess.

9. **SOFTWARE, SERVICES:** The Equipment may include licensed software ("Software") and/or services, including but not limited to training, installation, maintenance, custom programming, technical consulting and support services ("Services"). You grant us a security interest in your rights (including any rights as a license) in the Software to secure all amounts you owe us under any agreement with us. Ownership of any Software shall remain with the licensor thereof and your rights with respect to such Software shall be governed by a separate license agreement between you and the licensor, which shall not be affected by this Agreement. Any Services shall be performed by a service provider unrelated to us. IN NO EVENT SHALL WE HAVE ANY OBLIGATION TO PERFORM ANY SERVICES, AND ANY FAILURE OF SUCH SERVICE-PROVIDER TO PROVIDE ANY SERVICES FINANCED HEREUNDER SHALL NOT EXCUSE YOUR OBLIGATIONS TO US. WE SHALL NOT BE LIABLE TO YOU, NOR SHALL THERE BE ANY ABATEMENT OR SETOFF IN YOUR PAYMENTS, FOR ANY LIABILITY, CLAIM, LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED BY ANY SOFTWARE OR SERVICES. Upon the occurrence of a default, in addition to all other remedies provided for under this Agreement, we shall have the right to cause the termination of any or all Software and Services.

10. **INSPECTIONS AND REPORTS:** We will have the right, at any reasonable time, to inspect the Equipment and any documents relating to its use, maintenance, and repair. Within 30 days after our request, you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end, and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Annual statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise expressly agreed to by us in writing by us, each financial statement submitted to us shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains.



11. **OFAC; CUSTOMER IDENTIFICATION PROGRAM - USA PATRIOT ACT NOTICE.:** Debtor represents and warrants to Secured Party that neither Debtor nor any of its affiliates (a) is a person whose property or interests in property are blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) is engaged in any dealings or transactions prohibited by Section 2 of such executive order, or be otherwise associated with any such person in any manner violative of Section 2, or (c) is a person on the list of Specially Designated Nationals and Blocked Persons or subject to the limitations or prohibitions under any other OFAC regulation or executive order. Debtor and any affiliates of Debtor are in compliance with the (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism Act, Title III of Pub. L. 107-56, signed into law October 26, 2001 (the "USA Patriot Act"). No part of the proceeds of the loan made under this Agreement will be used, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended. Debtor hereby acknowledges receipt of notification that, pursuant to the requirements of the USA PATRIOT Act, Secured Party (for itself and not on behalf of any other party) is required to obtain, verify and record information that identifies Debtor and its affiliates, which information includes the name and address of Debtor and its affiliates and other information that will allow Secured Party to identify Debtor and its affiliates in accordance with the USA PATRIOT Act. We may also ask to see other documents that substantiate your business identity. You agree to submit the original duly-signed documents via overnight courier the same day of the facsimile or scanned transmission of the documents.

12. **FAXED OR SCANNED DOCUMENTS, MISC.:** Any faxed or scanned copy may be considered the original, and you waive the right to challenge in court the authenticity or binding effect of any faxed or scanned copy or signature thereon. You agree to execute any further documents that we may request to carry out the intents and purposes of this Agreement. All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on this Agreement or such other address as a party may provide in writing from time to time. By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our agents. These calls and messages may incur access fees from your provider.

13. **PREPAYMENT: THIS IS A NONCANCELLABLE AGREEMENT AND MAY NOT BE CANCELLED OR PREPAID BY YOU EXCEPT IN ACCORDANCE WITH THIS SECTION.** If you decide to pay off this Agreement prior to the end of the full term, you must notify us in writing at least 30 days in advance. In the event you notify us of your decision to pay off this Agreement prior to the end of the full term, you will pay to us all amounts due hereunder as a lump sum, including all future Payments to the end of the term discounted to present value using a 4% annual rate, and including all other accrued and unpaid charges including but not limited to all Additional Amounts. You will make all Payments under this Agreement whether or not you are satisfied with the Equipment and without deduction or setoff for any claim you may have against the supplier of the Equipment or against us. No partial prepayment is allowed.

14. <u>WARRANTY DISCLAIMERS:</u> **YOU AGREE THAT YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND YOU DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR OUR AGENTS. WE ARE NOT RESPONSIBLE FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF OURS AND WE ARE NOT AN AGENT OF THE SUPPLIER IN RESPECT OF THIS AGREEMENT, AND NOTHING THE SUPPLIER STATES OR DOES (OR FAILS TO DO) SHALL HAVE ANY AFFECT ON YOUR OBLIGATIONS UNDER THIS AGREEMENT. YOU WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST US OR ANY SUPPLIER, LICENSOR, OR MANUFACTURER. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, OR ANY OTHER ISSUE WITH OR RELATING TO THE EQUIPMENT.**

15. **LAW, JURY WAIVER, INTERPRETATION, ETC.:** This Agreement may be modified only by written agreement signed by Debtor and Secured Party and not by course of performance. This Agreement will be governed by and construed in accordance with Massachusetts law, without regard to its conflicts of laws principals. Any waiver by Secured Party must be in a writing signed by a duly authorized representative of Secured Party, and forbearance shall not constitute a waiver. All instances of the word "including" and similar terms will be deemed to be followed by the phrase "without limitation". The titles to the paragraphs of this agreement are solely for the convenience of the parties and are not an aid in the interpretation. If any term or provision of this Agreement is held invalid, illegal, or unenforceable by a court of competent jurisdiction, such term or provision shall be deemed stricken, and all other terms and provisions shall remain in full force and effect in that jurisdiction and all others. You consent to the jurisdiction of and venue in any state or federal court in Massachusetts and waive all claims and defenses of lack of jurisdiction or improper or inconvenient forum. For any action arising out of or relating to this Agreement or the Equipment, **YOU AND WE WAIVE ALL RIGHTS TO A TRIAL BY JURY.** This Agreement, including the attached Schedule A, constitutes the entire agreement between the parties regarding its subject matter, and Debtor represents to Secured Party that Debtor is not relying on any oral or written promises not expressed in this Agreement. Debtor acknowledges that Secured Party is relying on Debtor's representation in the preceding sentence as an inducement to Secured Party entering into this Agreement, and without Debtor's representation Secured Party would not enter into this Agreement. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. Time is of the essence with respect to Debtor's performance of its obligations under this agreement. The obligations of Debtor shall survive the release of any security interest in the Equipment.

| CUSTOMER ACCEPTANCE (UNDER SEAL) | | |
|---|---|---|
| By signing below, you certify that you have reviewed, understand, and agree to all terms and conditions of this Agreement. | | |
| Heroes Logistics, Inc. | | *President* |
| **CUSTOMER (AS REFERENCED ABOVE):** | SIGNATURE | TITLE |
| **SECURED PARTY:** | | |
| FIRESTONE FINANCIAL, LLC | | |
| **SECURED PARTY** | SIGNATURE  Cynthia L. Owens-Nix | TITLE |

AVP – Loan Closing



## *Schedule A*
### *of*
## *Equipment Finance Agreement*
### *of*
#### Heroes Logistics, Inc.

All (i) Equipment of the Debtor (A) listed below, (B) such Equipment which Debtor has previously granted a security interest to Lender, and (C) such Equipment which shall be attached to any Note or other security agreement with Lender and made a part thereof, in each case whether now or hereafter existing, which is now or hereafter owned by Debtor or in which Debtor now has or hereafter acquires rights; (ii) as it relates to such Equipment, all fixtures, inventory, goods, accounts, chattel paper, general intangibles, documents, instruments, contracts, securities (in each case as such terms are defined in the Uniform Commercial Code) arising therefrom, all parts of, all accessions to, all replacements for, all products of, all payments of any type in lieu of or in respect of such Equipment, and all documents and general intangibles covering or relating to, any or all of the foregoing; (iii) all cash and cash equivalents representing any security deposits paid to Lender; and (iv) all proceeds of any and all of the foregoing and, to the extent not otherwise included, all payments under insurance (whether or not Lender is the loss payee thereof), or under any indemnity, warranty or guaranty by reason of loss to or otherwise with respect to any of the foregoing Collateral.

| Quantity | Description | Serial Number |
|---|---|---|
| 1 | 2016 Freightliner Cascadia 125SLP | 3AKJGLD51GSGU0895 |

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 3AKJGLD51GSGU0895 | 2016 | FREIGHTLINER | CASCADIA 125 | TRUCK | 18232695053 |

3AKJGLD51GSGU0895

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 08/20/18 | | | | 07/25/18 USED | ORIGINAL |

LEGEND(S)

MAILING ADDRESS

MILEAGE NOT REQUIRED

FIRESTONE FINANCIAL LLC
117 KENDRICK ST STE 200
NEEDHAM  MA  02494-2728

OWNER(S) NAME AND ADDRESS
HEROES LOGISTICS INC
4629 YACKLEY AVE APT 8
LISLE  IL  60532

FIRST LIENHOLDER NAME AND ADDRESS
FIRESTONE FINANCIAL LLC
117 KENDRICK ST STE 200
NEEDHAM  MA  02494-2728

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

_____ By _____ Date _____
Firm Name          Signature of Authorized Agent

_____ By _____ Date _____
Firm Name          Signature of Authorized Agent

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party:                            Address:

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
   WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

NO
TENTHS

ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____          DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____          Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

Q3070008

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATI**

---

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
**NOTICE OF SALE**

SEE INST

| FREIGHTLINER | 2016 | | 3AKJGLD51GSGU0895 |
|---|---|---|---|
| Vehicle Make | Vehicle Year | | Vehicle Identification Number (VIN) |

| Name of Seller (Current Registered Owner) | Name of Buyer |
|---|---|

| Complete Address of Seller | Complete Address of Buyer |
|---|---|

| City | State | ZIP | City |
|---|---|---|---|

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature                    Printed Name of Seller

**EXHIBIT**

tabbies

Ex. 2

Federal and State law re... ...prisonment.

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ _____ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____
Dealer No. _____
Dealer's Name

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.
Printed Name (same as signature)

Signature of Buyer/Agent | Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ _____ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____
Dealer No. _____
Dealer's Name

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.
Printed Name (same as signature)

Signature of Buyer/Agent | Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ _____ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____
Dealer No. _____
Dealer's Name

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.
Printed Name (same as signature)

Signature of Buyer/Agent | Printed Name (same as signature)

## FOURTH REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ _____ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____
Dealer No. _____
Dealer's Name

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.
Printed Name (same as signature)

Signature of Buyer/Agent | Printed Name (same as signature)

## LAST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ _____ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____
Dealer No. _____
Dealer's Name

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.
Printed Name (same as signature)

Signature of Buyer/Agent | Printed Name (same as signature)

VSD 40.24

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.



## MASTER UNLIMITED GUARANTY
### (All Guarantors)

MASTER UNLIMITED GUARANTY, dated as of 7-27-, 20(?)in favor of FIRESTONE FINANCIAL, LLC, a Massachusetts limited liability company with its principal office at 117 Kendrick Street, Suite 200 Needham, Massachusetts, 02494-2728 ("Lender"). In consideration of Lender's giving, in its discretion from time to time, credit facilities or accommodations to Heroes Logistics, Inc. (together with its successors, the "Borrower"), each of the undersigned (each a "Guarantor"), agrees as follows:

1.      GUARANTY OF PAYMENT AND PERFORMANCE. Each Guarantor, jointly and severally if more than one, hereby guarantees to Lender the full and punctual payment when due (whether at maturity, by acceleration or otherwise) and the performance, of all liabilities, agreements and other obligations of the Borrower to Lender, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired, whether by way of discount, lease, loan or otherwise and whether the Borrower may be liable individually or jointly with others (the "Obligations"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations and not of their collectability only and is in no way conditioned upon any requirement that Lender first attempt to collect any of the Obligations from the Borrower or resort to any security or other means of obtaining their payment. Should the Borrower default in the payment or performance of any of the Obligations, the obligations of each Guarantor hereunder shall become immediately due and payable to Lender, without demand or notice of any nature, all of which are expressly waived by each Guarantor. Payments by a Guarantor hereunder may be required by Lender on any number of occasions.

2.      GUARANTOR'S AGREEMENT TO PAY. Each Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to Lender, on demand, all costs and expenses (including court costs and reasonable attorneys' fees and expenses) incurred or expended by Lender in connection with the Obligations, this Guaranty and the enforcement thereof, together with interest on amounts recoverable under this Guaranty from the time such amounts become due until payment in full, at the rate per annum equal to 18%; provided that if such interest exceeds the maximum amount permitted to be paid under applicable law, then such interest shall be reduced to such maximum permitted amount.

3.      UNLIMITED GUARANTY. The liability of each Guarantor hereunder shall be unlimited.

4.      REPRESENTATIONS AND WARRANTIES. Each Guarantor makes the following representations and warranties which shall survive the execution and delivery of this Guaranty:

a.      If the Guarantor is a corporation, partnership, limited liability company, business trust or other legally recognized entity, the Guarantor (i) is duly organized and validly existing in good standing under the laws of the jurisdiction in which it is organized; (ii) has the power and authority to own its properties and to carry on its business as being conducted on the date hereof; (iii) is duly qualified to transact business and is in good standing in every jurisdiction in which the ownership of property or the nature of the business conducted by it makes such qualification necessary; (iv) has the power and authority to execute, deliver and carry out the terms and provisions of this Guaranty; and (v) has taken all necessary action (including, without limitation, any consent of stockholders, partners, members or beneficiaries required by law, by its charter, by-laws or other organizational agreement or otherwise) to authorize the execution, delivery and performance hereof and the consummation of the transactions contemplated hereby.

b.      The person signing this Guaranty and each of the other loan documents on behalf of the Guarantor has full power and authority to do so. Each of the loan documents to which the Guarantor is a party (i) has been duly executed and delivered by Guarantor, and (ii) constitutes the legal, valid, and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms.

c.      Neither the execution and delivery of this Guaranty, nor the consummation of any of the transactions contemplated hereby nor compliance of any of the terms and provisions hereof will conflict with, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in any violation of, or result in the creation of any lien upon any of the properties or assets of the Guarantor pursuant to its charter, by-laws, organizational documents, or any applicable law, statute, rule, regulation or award of any arbitrator or any agreement, instrument, order, judgment or decree to which the Guarantor is a party or by which it or its properties are subject or may be bound.

d.      Neither the execution and delivery of this Guaranty, nor the consummation of any of the transactions contemplated hereby requires any consent, approval or authorization of, or filing, recording, registration or qualification with, any court or governmental or administrative body or authority.

e.      There are no actions, suits or proceedings pending, or to the best of the Guarantor's knowledge after due inquiry with respect thereto threatened, against or affecting the Guarantor before any court or before any governmental or administrative body which might result in any material adverse change in the business, operations, properties, assets or condition (financial or otherwise) of the Guarantor or in any material liability on the part of the Guarantor.

f.      The Guarantor has, independently and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Guaranty. This Guaranty is not made in reliance on any representation or warranty, express or implied, by Lender concerning the financial condition of the Borrower, the nature, value or extent of any security for the Obligations, or any other matter. The Guarantor warrants that it has full knowledge of the financial condition of the Borrower and agrees that it will continue to be fully cognizant of the Borrower's financial condition until all Obligations are finally paid in full in cash, and Lender has no obligation to advise the Guarantor of any information relating to the Borrower's financial condition or otherwise relating to the Borrower or any Obligation or any security therefor or guaranty thereof.

g.      The Guarantor will receive substantial direct and indirect benefits from the financial accommodations extended by Lender to the Borrower, and the waivers set forth in this Guaranty are knowingly made in contemplation of such benefits. Guarantor hereby waives any defense and/or claim to the effect that Guarantor's obligations hereunder are not supported by consideration

h.      All financial statements of the Guarantor (including any related schedules and notes) furnished to Lender are complete and correct and have been prepared in accordance with generally accepted accounting principles consistently applied. The balance sheets fairly present the financial position of the Guarantor as at the date thereof, and the statements of income, changes in retained earnings, and statements of cash flows fairly present the results of the operations of the Guarantor for the period indicated. There has been no material adverse change in the business, operations, properties or assets or in the condition (financial or otherwise) of the Guarantor since the date of such financial statements.

**EXHIBIT**

Ex. 3

i.    There are no attachments, levies, executions, assignments for the benefit of creditors, receiverships, conservatorships or voluntary or involuntary proceedings in bankruptcy or pursuant to any other debt or relief laws contemplated by Guarantor or, to the best of Guarantor's knowledge after due inquiry, currently pending in any judicial or administrative proceeding against Guarantor.

j.    All written information supplied or delivered to Lender by Guarantor in connection with the transactions contemplated by this Guaranty and the other loan documents to which Guarantor is a party is materially true, correct, and complete as of the dates specified therein.

k.    Guarantor has filed all federal, state and local tax returns and has paid all of its current obligations before delinquent or has obtained an extension therefor, including all federal, state and local taxes and all other payments required under federal, state or local law.

5.    WAIVERS BY GUARANTOR; LENDER'S FREEDOM TO ACT. Each Guarantor agrees that the Obligations will be paid and performed strictly in accordance with their respective terms regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto. Each Guarantor waives presentment, demand, protest, notice of acceptance, notice of Obligations incurred, notice of any indulgences or extensions granted to the Borrower or to any other person which may be liable for the Obligations, notice of the occurrence of a default or an event of default under any Obligation, notice of presentment and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshalling of assets of the Borrower, and all suretyship defenses generally. Without limiting the generality of the foregoing, each Guarantor agrees to the provisions of any instrument evidencing, securing or otherwise executed in connection with any Obligation and agrees that the obligations of the Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure of Lender to assert any claim or demand or to enforce any right or remedy against the Borrower; (ii) any extensions or renewals of any Obligation; (iii) any rescissions, waivers, amendments or modifications of any of the terms or provisions of any agreement evidencing, securing or otherwise executed in connection with any Obligation; (iv) the substitution or release of any person primarily or secondarily liable for any Obligation, including any Guarantor hereunder; (v) the adequacy of any rights Lender may have against any collateral or other means of obtaining repayment of the Obligations; (vi) the impairment of any collateral securing the Obligations, including without limitation the failure to perfect or preserve any rights Lender might have in such collateral or the substitution, exchange, surrender, release, loss or destruction of any such collateral; (vii) any change or restructuring of the organizational structure of the Borrower; or (viii) any other act or omission which might in any manner or to any extent vary the risk of any Guarantor or otherwise operate as a release or discharge of any Guarantor, all of which may be done without notice to any Guarantor.

6.    UNENFORCEABILITY OF OBLIGATIONS AGAINST BORROWER. If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on each Guarantor to the same extent as if each Guarantor at all times had been the principal obligor on all such Obligations. In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligation shall be immediately due and payable by each Guarantor.

7.    SUBROGATION. Until the payment and performance in full of all Obligations and any and all obligations of the Borrower to any affiliate of Lender, no Guarantor shall exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation or otherwise, and will not prove any claim in competition with Lender or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; no Guarantor will claim any set-off or counterclaim against the Borrower in respect of any liability of any Guarantor to the Borrower; and each Guarantor waives any benefit of and any right to participate in any collateral which may be held by Lender or any such affiliate.

8.    SUBORDINATION OF OTHER BORROWER DEBT. The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by each Guarantor is hereby subordinated to the prior payment in full of the Obligations, provided that so long as no default in the payment or performance of the Obligations has occurred and is continuing, or no demand for payment of any of the Obligations has been made that remains unsatisfied, the Borrower may make, and a Guarantor may demand and accept, any scheduled payments of principal of and interest on such subordinated indebtedness in the amounts, at the rates and on the dates specified in such instruments, securities or other writings as shall evidence such subordinated indebtedness. Each Guarantor agrees that after the occurrence of any default in the payment or performance of the Obligations, the Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, any Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by such Guarantor as trustee for Lender and be paid over to Lender on account of the Obligations without affecting in any manner the liability of such Guarantor under the other provisions of this Guaranty.

9.    FURTHER ASSURANCES. Each Guarantor agrees that such Guarantor will, from time to time at the request of Lender, provide to Lender its most recent audited and unaudited balance sheets and related statements of income and retained earnings and changes in cash flow (prepared on a consolidated basis with the Guarantor's subsidiaries, if any) and such other information relating to the business and affairs of the Guarantor as Lender may reasonably request. Each Guarantor also agrees, upon demand after any change in the condition or affairs (financial or otherwise) of such Guarantor deemed by Lender to be adverse and material, to secure the payment and performance of such Guarantor's obligations hereunder by delivering, assigning or transferring to Lender or granting Lender a security interest in additional collateral of a value and character satisfactory to Lender, and authorizes Lender to file any financing statement deemed by Lender to be necessary or desirable to perfect any security interest granted by such Guarantor to Lender, and as agent for such Guarantor, to sign the name of such Guarantor thereto. Each Guarantor also agrees to do all such things and execute all such documents, including financing statements, as Lender may consider necessary or desirable to give full effect to this Guaranty and to perfect and preserve the rights and powers of Lender hereunder. Each Guarantor also agrees that promptly after such Guarantor obtains knowledge of any default or event or circumstances which with the passage of time or giving of notice will become a default or event of default by the Borrower on any Obligation, or of any material change in the financial position or business of the Borrower, such Guarantor will immediately notify Lender of such default, event, circumstance or change.

10.    TERMINATION; REINSTATEMENT. This Guaranty shall remain in full force and effect with respect to all Guarantors until Lender is given written notice of a Guarantor's intention to discontinue this Guaranty, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Obligations. No such notice shall be effective unless received and acknowledged by an officer of Lender. No such notice shall affect any rights of Lender with respect to Obligations incurred prior to the receipt of such notice or with respect to Obligations incurred

2

pursuant to any contract or commitment in existence prior to such receipt, and all notes, instruments (negotiable or otherwise) and writings made by or for the account of the Borrower purporting to be dated on or before the date of receipt of such notice, although presented to or accepted by Lender after that date, shall form part of the Obligations. No notice from one Guarantor shall affect the obligations of any other Guarantor hereunder. This Guaranty shall continue to be effective or be reinstated, notwithstanding any such notice, if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by Lender upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

11.     SUCCESSORS AND ASSIGNS. This Guaranty shall be binding upon each Guarantor, each Guarantor's successors and assigns, and shall inure to the benefit of and be enforceable by Lender and its successors, transferees and assigns; provided, however, that (a) Guarantor shall not assign or otherwise transfer its obligations under this Guaranty and no such purported assignment shall be effective without Lender's prior written consent, which consent may be withheld in Lender's sole and absolute discretion; and (b) no assignment or other transfer by Guarantor of any of its obligations under this Guaranty shall relieve Guarantor of any of its obligations hereunder or thereunder. Lender may assign or otherwise transfer any agreement or any note held by it evidencing, securing or otherwise executed in connection with the Obligations, or sell participations in any interest therein, to any other person or entity, and such other person or entity shall thereupon become vested, to the extent set forth in the agreement evidencing such assignment, transfer or participation, with all the rights in respect thereof granted to Lender herein.

12.     AMENDMENTS AND WAIVERS. No amendment or waiver of any provision of this Guaranty nor consent to any departure by any Guarantor therefrom shall be effective unless the same shall be in writing and signed by Lender. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. No course of dealing between Guarantor and Lender shall operate as a waiver of any of Lender's rights under this Guaranty or with respect to any of the Obligations.

13.     NOTICES. All notices and other communications called for hereunder shall be made in writing and shall be delivered by hand, facsimile or mailed first class mail postage prepaid, in each case addressed as follows: if to a Guarantor, at the address set forth adjacent to the Guarantor's signature hereto, and if to Lender, at 117 Kendrick Street, Suite 200 Needham, Massachusetts, 02494-2728, Attention: President, facsimile no. (617) 332-8032. All notices shall be deemed delivered two business days after deposit with the United States Postal Service, or if delivered by facsimile, courier or by personal delivery, then notice is deemed delivered upon the date and time of actual receipt or refusal of delivery by the representative's agents and employees. Any party may designate a different address or person to whom such notices should be sent by giving notice thereof as provided herein, which change of address shall be effective upon receipt.

14.     GOVERNING LAW; CONSENT TO JURISDICTION. This Guaranty shall be construed as having been made in The Commonwealth of Massachusetts, and each Guarantor agrees that, by entering into this Guaranty, each Guarantor transacted business in Massachusetts. This Guaranty is intended to take effect as a sealed instrument and shall be governed by, and construed in accordance with, the laws of The Commonwealth of Massachusetts. Each Guarantor agrees that any suit for the enforcement of this Guaranty may be brought in the courts of The Commonwealth of Massachusetts or any Federal Court sitting therein and consents to the non-exclusive jurisdiction of such court and to service of process in any such suit being made upon the Guarantor by mail at the address specified in the above under "Notices". Each Guarantor hereby waives any objection that such Guarantor may now or hereafter have to the venue of any such suit or any such court or that such suit was brought in an inconvenient court.

15.     JOINT AND SEVERAL LIABILITY. All references to the Guarantor in this Guaranty refer to each of the undersigned Guarantors. Each Guarantor is liable for all of the Obligations of the Borrower, and the liability of the Guarantors is joint and several.

16.     COUNTERPARTS; FACSIMILE EXECUTION. This Guaranty may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute the Guaranty by signing any such counterpart. Delivery of an executed counterpart of the Guaranty by facsimile or electronic mail shall be equally as effective as delivery of original executed counterparts of the Guaranty. Any party delivering an executed counterpart of the Guaranty by facsimile or electronic mail also shall deliver an original executed counterpart, but the failure to so deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of the Guaranty.

17.     **JURY WAIVER. EACH GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS GUARANTY, ANY RIGHTS OR OBLIGATIONS HEREUNDER, THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY RELATING TO THIS GUARANTY, AND AGREES THAT IT WILL NOT SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, EACH GUARANTOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION REFERRED TO IN THE PRECEDING SENTENCE ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE PROVISIONS OF THIS PARAGRAPH SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER LENDER NOR ANY GUARANTOR HAS AGREED WITH OR REPRESENTED TO ANY OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES. In any jurisdiction where the foregoing jury waiver is not enforceable (or to the extent the jury waiver is deemed by any court not to be enforceable), including specifically the state of California, the parties agree that any dispute arising out of or related to this Guaranty shall be submitted to arbitration, which will be final and binding. Any such arbitration will be heard by a single arbitrator and will take place, if the Borrower is headquartered in California, in Los Angeles, California, and, if the Borrower is headquartered elsewhere, the nearest city to the Borrower's headquarters with a population of 250,000 or more. The arbitration shall be carried out in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. Discovery in any such proceeding will be limited to statements of fact, copies of relevant documents, and sworn declarations and affidavits, all as determined by the arbitrator in his or her sole discretion. Judgment may be entered on the arbitrator's award in any court having jurisdiction**

3

18.    MISCELLANEOUS.  This Guaranty constitutes the entire agreement of each Guarantor with respect to the matters set forth herein.  The rights and remedies herein provided are cumulative and not exclusive of any remedies provided by law or any other agreement, and this Guaranty shall be in addition to any other guaranty of the Obligations.  The invalidity or unenforceability of any one or more sections of this Guaranty shall not affect the validity or enforceability of its remaining provisions.  Captions are for the ease of reference only and shall not affect the meaning of the relevant provisions.  The meanings of all defined terms used in this Guaranty shall be equally applicable to the singular and plural forms of the terms defined.

IN WITNESS WHEREOF, each Guarantor has caused this Guaranty to be executed and delivered by its duly authorized officer, as of the date first above stated, as a sealed instrument.

GUARANTOR:

| | 4629 Yackley Ave Apt 8, Lisle, IL 60532 |
|---|---|
| Jonce Strumenikovski | Lisle, IL  60532 |

4

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

RECEIVED
IL SECRETARY OF STATE
UNIFORM COMMERCIAL CODE
20180730    1721
$20.00    Electronic

**23607255**    FS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| Corporation Service Company | 800-858-5294 |

B. E-MAIL CONTACT AT FILER (optional)
FilingDept@cscinfo.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Corporation Service Company

801 Adlai Stevenson Drive

Springfield, IL, 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC 1Ad)

| OR | 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| | Heroes Logistics, Inc. | | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4629 Yackley Ave Apt 8 | Lisle | IL | 60532 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC 1Ad)

| OR | 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME  (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one secured party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| | Firestone Financial, LLC | | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 117 Kendrick Street | Needham | MA | 02494-2728 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All (i) equipment of the Borrower (A) listed below or on any Schedule "A" attached hereto and made a part hereof, (B) such equipment which Borrower has previously granted a security interest to Lender, and (C) such equipment which shall be attached to any Note or other security agreement with Lender and made a part thereof, in each case whether now or hereafter existing, which is now or hereafter owned by Borrower or in which Borrower now has or hereafter acquires rights; (ii) as it relates to such equipment, all fixtures, inventory, goods, accounts, chattel paper, general intangibles, documents, instruments, contracts, securities (in each case as such terms are defined in the Code) arising therefrom, all parts of, all accessions to, all replacements for, all products of, all payments of any type in lieu of or in respect of such equipment, and all documents and general intangibles covering or relating to, any or all of the foregoing; (iii) all cash and cash equivalents representing any security deposits paid to Lender; and (iv) all proceeds of any and all of the foregoing Collateral and, to the extent not otherwise included, all payments under insurance (whether or not Lender is the loss payee thereof), or under any indemnity, warranty or guaranty by reason of loss to or otherwise with respect to any of the foregoing Collateral. (1) 2016 Freightliner Cascadia 125SLP VIN 3AKJGLD51GSGU0895.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/License

8. OPTIONAL FILER REFERENCE DATA:
[149930271]

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)  (Rev. 04/20/11)

**EXHIBIT**
Ex. 4


**FIRESTONE FINANCIAL**
A Berkshire Bank Company

START DATE: **JUL 2 7 2018**    *Equipment Finance Agreement ("Agreement")* AGREEMENT NO.

Send Account Inquiries and Payments to: FIRESTONE FINANCIAL, LLC 117 Kendrick St STE 200 • Needham, MA 02949

The words **Debtor, you** and **your** refer to Customer. The words Secured Party, **we, us,** and **our** refer to **FIRESTONE FINANCIAL, LLC.**

| CUSTOMER INFORMATION | |
|---|---|
| FULL LEGAL NAME OF BUSINESS/PERSON: Heroes Logistics, Inc. | STREET ADDRESS: 4629 Yackley Ave Apt 8 |
| CITY: Lisle | STATE: IL ZIP: 60532 |
| PHONE: (630) 788-8875 | FAX: | E-MAIL: |
| EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE) : | STREET ADDRESS: |
| CITY: | STATE: ZIP: |
| BILLING ADDRESS (IF DIFFERENT FROM ABOVE) : | STREET ADDRESS: 4629 Yackley Ave Apt 8 |
| CITY: Lisle | STATE: IL ZIP: 60532 |

EQUIPMENT:
SEE SCHEDULE A

**PAYMENTS & TERMS**

| AMOUNT FINANCED | FIRST PAYMENT DUE DATE | PAYMENTS DUE ON | Final Payment Due Date |
|---|---|---|---|
| $74,377.50 | August 27, 2018 | 27 day of each month, until paid in full | July 27, 2023 |
| Number of Payments | | Payment Amount | |
| 60 | | $1,555.14 | |

## THIS AGREEMENT IS NONCANCELABLE AND IRREVOCABLE AND CANNOT BE TERMINATED.

1.  **AGREEMENT:** For business purposes only, you have requested that we finance the purchase price of the goods and/or services listed and described in this Agreement (the "Equipment"), and you agree to finance the purchase price of the Equipment under the terms and conditions of this Agreement. The goods or services comprising the Equipment may include licensed software. You agree to all of the terms and conditions in this Agreement, and you acknowledge and agree that this Agreement supersedes any terms or conditions of any purchase order or invoice whenever and by whomever delivered. You authorize us to correct or insert missing Equipment identification information. This Agreement becomes valid upon execution by both you and us and will start on the date we pay the supplier of the Equipment ("Start Date").

2.  **PAY PROCEEDS AUTHORIZATION:** You hereby authorize and instruct us to advance funds as follows:

| Name and Address | Reference | Payment Amount | |
|---|---|---|---|
| Compass Truck Sales, LLC 15W580N Frontage Road Burr Ridge, IL 11655 | Puruchase Agreement #12121 | $ 73,882.50 | |
| Firestone Financial, LLC 117 Kendrick Street Suite 200 Needham, MA 02494-2728 | Loan Processing Fee | $ 495.00 | |
| | Total: | $74,377.50 | |

3.  **DELIVERY AND INSTALLATION:** You hereby acknowledge and agree that all of the Equipment has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes related to this Agreement, including your payment obligations to us, regardless of any delay, failure, non-acceptance, loss, damage, claim, or other issue you may have or that may arise in respect of the Equipment or any supplier, vendor, employee, carrier, representative, agent, reseller, or service provider. You hereby authorize us to advance all of the funds in accordance with this Agreement and to start billing you as provided in this Agreement. You represent and warrant that all down payments, tax, freight, installation, or other charges or fees (each an "Additional Amount") not included in the Amount Financed have been paid in full with respect to all of the Equipment. If you fail to pay any Additional Amount, then without limiting any of our rights and remedies, we reserve the right to pay the Additional Amount on your behalf and add it to your Amount Financed or invoice you separately. Unless included in the Amount Financed, you agree to reimburse us when we request and to pay us a processing fee for each Additional Amount we pay on your behalf.

4.  **PAYMENTS, TAXES AND FEES:** You will ensure that we receive all Payments when due. You are the owner of the Equipment, and you agree to pay when due all taxes (including personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Equipment or for its use or operation or upon this Agreement, each of which shall be considered an Additional Amount under Section 3 above. At our option, we may discharge taxes, liens or other encumbrances at any time levied or placed on the Equipment, and any expenditure by us any of those items will be considered an Additional Amount under Section 3 above. We will have the right to apply any sums received from you to any amounts due to us under this Agreement. If for any reason your check is returned for nonpayment, you will pay us a bad check charge of $35 or, if less, the maximum charge allowed by law. We may make a profit on any fees and other charges under this Agreement.

5.  **MAINTENANCE AND LOCATION OF EQUIPMENT; SECURITY INTEREST:** At your expense, you agree to keep the Equipment: (1) in good repair, condition and working order, in compliance with applicable manufacturers' and regulatory standards; (2) free and clear of all liens and claims; and (3) only at the Equipment location listed above. You agree not to move the Equipment from the location listed above unless we agree in writing in advance. You are solely responsible for any data that may reside in the Equipment, including but not limited to hard drives, disk drives or any other form of memory. You agree all repairs required to maintain the Equipment to be made promptly by qualified and, if applicable, licensed providers. If you fail to mail...

Page 1 of 4

EXHIBIT
Ex. 5



**FIRESTONE** FINANCIAL
A Berkshire Bank Company

Equipment as required by this Agreement, we may pay for the maintenance and preservation of the Equipment and any expenditure in this regard with be considered an Additional Amount under Section 3 above. Without our prior written consent, Debtor shall not make any alterations, additions or improvements to any Equipment detract from its economic value or functional utility. All additions and improvements made to any Equipment shall not be removed if removal would impair the Equipment's economic value or functional utility. You grant us a security interest in the Equipment together with all replacements, parts, repairs, additions, improvements, modifications, substitutions, and accessions incorporated therein or attached or made thereto and any and all proceeds of the foregoing, including, without limitation, insurance proceeds, to secure all amounts you owe to us under any agreement with us, and you authorize us to file all applicable financing statements (e.g., UCC-1) or be named on any vehicle title to evidence our security interest in the Equipment. You will not change your state of organization, headquarters or residence without providing prior written notice to us so that we may amend or file new financing statements. You will notify us within 30 days if your state of organization revokes or terminates your existence.

6. **COLLATERAL PROTECTION; INSURANCE; INDEMNITY; LOSS OR DAMAGE:** You agree to keep the Equipment fully insured against risk and loss, with us ISAOA ATIMA as lender's loss payee and/or additional insured, as determined by us in our sole discretion in an amount not less than the original Equipment cost until this Agreement is terminated. You will provide 10 days advance written notice to us of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. If you fail to comply with this requirement within 30 days after the start of this Agreement, we may charge you a monthly property damage surcharge of up to .0035 of the Equipment cost as a result of our credit risk and administrative and other costs, as would be further described on a letter from us to you. In addition, if you fail to maintain the insurance required by this Agreement, we may pay for insurance on the Equipment and any expenditure in this regard with be considered an Additional Amount under Section 3 above. We may make a profit on this program. We are not responsible for, and you agree to defend, indemnify, and hold us harmless from and against, any claim, loss, expense, liability, or injury, including reasonable attorneys' fees and costs, caused by or in any way related to the Equipment, including its delivery, installation, possession, use, condition, inspection, removal, or storage. While it is not anticipated that Secured Party shall have any liability for torts related to the Equipment, this indemnity provision covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, copyright, trademark, service mark, or other intellectual property infringement, misuse, or misappropriation claim. You are responsible for the risk of loss and any destruction of or damage to the Equipment. You agree to promptly notify us in writing of any loss or damage. If the Equipment is destroyed and we have not otherwise agreed in writing, you will immediately pay to us the unpaid balance of this Agreement as a lump sum, including all future Payments to the end of the term discounted to present value using a 2% annual rate. Any proceeds of insurance will be paid to us and credited, at our option, against any loss or damage. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to loss of or damage to the Equipment. All indemnities will survive the expiration or termination of this Agreement.

7. **ASSIGNMENT: YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR LEASE THE EQUIPMENT OR THIS AGREEMENT, without our prior written consent.** Without our prior written consent, you shall not reorganize or merge with any other entity or transfer all or a substantial part of your ownership interests or assets. We may sell, assign, or transfer this Agreement without notice. You agree that if we sell, assign or transfer this Agreement, your assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. **YOU AGREE THAT OUR ASSIGNEE WILL NOT BE SUBJECT TO ANY CLAIMS, DEFENSES, OR OFFSETS THAT YOU MAY HAVE AGAINST US.** You shall cooperate with us in executing any documentation reasonably required by us or our assignee to effectuate any such assignment. This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

8. **DEFAULT AND REMEDIES:** You will be in default if (a) you do not pay when due any Payment or other sum due to us or any of our affiliates or any material agreement with any other lender, (b) you make or have made any false statement or misrepresentation to us, (c) you or any guarantor of this Agreement dies, dissolves or terminates existence, (d) there has been a material adverse change in your or any guarantor's financial, business or operating condition, (e) any guarantor defaults under any guaranty for this Agreement, or (f) we in good faith deem ourselves insecure in respect of this Agreement as a result of a material adverse change in your financial condition or otherwise. If any part of a Payment is more than 10 days late, you agree to pay a late charge equal to 5% of the Payment which is late or if less, the maximum charge allowed by law. If you are ever in default, we may terminate this Agreement at any time and require that you immediately pay the unpaid balance of this Agreement as a lump sum, including all future Payments to the end of the term discounted to present value using a 2% annual rate. In addition to our other rights and remedies, we may recover default interest on any unpaid amount at the rate of 12% per year until paid. Concurrently and cumulatively, we may also use any or all of the remedies available to us under Article 9 of the UCC and any other law, including requiring that you: (1) deliver the Equipment to us to a location we specify; and (2) immediately stop using any Equipment. In addition, we will have the right, immediately and without notice or other action, to set-off against any of your liabilities to us any money, including depository account balances, owed by us to you, whether or not due. In the event of any dispute or enforcement of rights under this Agreement or any related agreement, you agree to pay our reasonable attorneys' fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee. If we take possession of the Equipment, you agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what you owe us under this Agreement and you will be responsible for any deficiency after such application. YOU AGREE THAT WE WILL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing any rights at a later time. You agree that your rights and remedies are governed exclusively by this Agreement. Your sole remedy if we collect interest in excess of the maximum allowed by law is a refund of the excess.

9. **SOFTWARE, SERVICES:** The Equipment may include licensed software ("Software") and/or services, including but not limited to training, installation, maintenance, custom programming, technical consulting and support services ("Services"). You grant us a security interest in your rights (including any rights as a license) in the Software to secure all amounts you owe us under any agreement with us. Ownership of any Software shall remain with the licensor thereof and your rights with respect to such Software shall be governed by a separate license agreement between you and the licensor, which shall not be affected by this Agreement. Any Services shall be performed by a service provider unrelated to us. IN NO EVENT SHALL WE HAVE ANY OBLIGATION TO PERFORM ANY SERVICES, AND ANY FAILURE OF SUCH SERVICE-PROVIDER TO PROVIDE ANY SERVICES FINANCED HEREUNDER SHALL NOT EXCUSE YOUR OBLIGATIONS TO US. WE SHALL NOT BE LIABLE TO YOU, NOR SHALL THERE BE ANY ABATEMENT OR SETOFF IN YOUR PAYMENTS, FOR ANY LIABILITY, CLAIM, LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED BY ANY SOFTWARE OR SERVICES. Upon the occurrence of a default, in addition to all other remedies provided for under this Agreement, we shall have the right to cause the termination of any or all Software and Services.

10. **INSPECTIONS AND REPORTS:** We will have the right, at any reasonable time, to inspect the Equipment and any documents relating to its use, maintenance, and repair. Within 30 days after our request, you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end, and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Annual statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise expressly agreed to by us in writing by us, each financial statement submitted to us shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains.



**FIRESTONE FINANCIAL**
A Berkshire Bank Company

11. **OFAC; CUSTOMER IDENTIFICATION PROGRAM - USA PATRIOT ACT NOTICE.:** Debtor represents and warrants to Secured Party that neither Debtor nor any of its affiliates (a) is a person whose property or interests in property are blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) is engaged in any dealings or transactions prohibited by Section 2 of such executive order, or be otherwise associated with any such person in any manner violative of Section 2, or (c) is a person on the list of Specially Designated Nationals and Blocked Persons or subject to the limitations or prohibitions under any other OFAC regulation or executive order. Debtor and any affiliates of Debtor are in compliance with the (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism Act, Title III of Pub. L. 107-56, signed into law October 26, 2001 (the "USA Patriot Act"). No part of the proceeds of the loan made under this Agreement will be used, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended. Debtor hereby acknowledges receipt of notification that, pursuant to the requirements of the USA PATRIOT Act, Secured Party (for itself and not on behalf of any other party) is required to obtain, verify and record information that identifies Debtor and its affiliates, which information includes the name and address of Debtor and its affiliates and other information that will allow Secured Party to identify Debtor and its affiliates in accordance with the USA PATRIOT Act. We may also ask to see other documents that substantiate your business identity. You agree to submit the original duly-signed documents via overnight courier the same day of the facsimile or scanned transmission of the documents.

12. **FAXED OR SCANNED DOCUMENTS, MISC.:** Any faxed or scanned copy may be considered the original, and you waive the right to challenge in court the authenticity or binding effect of any faxed or scanned copy or signature thereon. You agree to execute any further documents that we may request to carry out the intents and purposes of this Agreement. All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on this Agreement or such other address as a party may provide in writing from time to time. By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our agents. These calls and messages may incur access fees from your provider.

13. **PREPAYMENT: THIS IS A NONCANCELLABLE AGREEMENT AND MAY NOT BE CANCELLED OR PREPAID BY YOU EXCEPT IN ACCORDANCE WITH THIS SECTION.** If you decide to pay off this Agreement prior to the end of the full term, you must notify us in writing at least 30 days in advance. In the event you notify us of your decision to pay off this Agreement prior to the end of the full term, you will pay to us all amounts due hereunder as a lump sum, including all future Payments to the end of the term discounted to present value using a 4% annual rate, and including all other accrued and unpaid charges including but not limited to all Additional Amounts. You will make all Payments under this Agreement whether or not you are satisfied with the Equipment and without deduction or setoff for any claim you may have against the supplier of the Equipment or against us. No partial prepayment is allowed.

14. **WARRANTY DISCLAIMERS: YOU AGREE THAT YOU HAVE SELECTED THE EQUIPMENT AND EACH ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND YOU DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US OR OUR AGENTS. WE ARE NOT RESPONSIBLE FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF OURS AND WE ARE NOT AN AGENT OF THE SUPPLIER IN RESPECT OF THIS AGREEMENT, AND NOTHING THE SUPPLIER STATES OR DOES (OR FAILS TO DO) SHALL HAVE ANY AFFECT ON YOUR OBLIGATIONS UNDER THIS AGREEMENT. YOU WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST US OR ANY SUPPLIER, LICENSOR, OR MANUFACTURER. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, OR ANY OTHER ISSUE WITH OR RELATING TO THE EQUIPMENT.**

15. **LAW, JURY WAIVER, INTERPRETATION, ETC.:** This Agreement may be modified only by written agreement signed by Debtor and Secured Party and not by course of performance. This Agreement will be governed by and construed in accordance with Massachusetts law, without regard to its conflicts of laws principals. Any waiver by Secured Party must be in a writing signed by a duly authorized representative of Secured Party, and forbearance shall not constitute a waiver. All instances of the word "including" and similar terms will be deemed to be followed by the phrase "without limitation". The titles to the paragraphs of this agreement are solely for the convenience of the parties and are not an aid in the interpretation. If any term or provision of this Agreement is held invalid, illegal, or unenforceable by a court of competent jurisdiction, such term or provision shall be deemed stricken, and all other terms and provisions shall remain in full force and effect in that jurisdiction and all others. You consent to the jurisdiction of and venue in any state or federal court in Massachusetts and waive all claims and defenses of lack of jurisdiction or improper or inconvenient forum. For any action arising out of or relating to this Agreement or the Equipment, YOU AND WE WAIVE ALL RIGHTS TO A TRIAL BY JURY. This Agreement, including the attached Schedule A, constitutes the entire agreement between the parties regarding its subject matter, and Debtor represents to Secured Party that Debtor is not relying on any oral or written promises not expressed in this Agreement. Debtor acknowledges that Secured Party is relying on Debtor's representation in the preceding sentence as an inducement to Secured Party entering into this Agreement, and without Debtor's representation Secured Party would not enter into this Agreement. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. Time is of the essence with respect to Debtor's performance of its obligations under this agreement. The obligations of Debtor shall survive the release of any security interest in the Equipment.

| CUSTOMER ACCEPTANCE (UNDER SEAL) | | |
|---|---|---|
| By signing below, you certify that you have reviewed, understand, and agree to all terms and conditions of this Agreement. | | |
| Heroes Logistics, Inc. | *[signature]* | *President* |
| **CUSTOMER (AS REFERENCED ABOVE):** | SIGNATURE | TITLE |
| **SECURED PARTY:** | | |
| FIRESTONE FINANCIAL, LLC | | |
| **SECURED PARTY** | SIGNATURE | TITLE |

**FIRESTONE FINANCIAL**
A Berkshire Bank Company

# *Schedule A*
## *of*
## *Equipment Finance Agreement*
## *of*
### Heroes Logistics, Inc.

All (i) Equipment of the Debtor (A) listed below, (B) such Equipment which Debtor has previously granted a security interest to Lender, and (C) such Equipment which shall be attached to any Note or other security agreement with Lender and made a part thereof, in each case whether now or hereafter existing, which is now or hereafter owned by Debtor or in which Debtor now has or hereafter acquires rights; (ii) as it relates to such Equipment, all fixtures, inventory, goods, accounts, chattel paper, general intangibles, documents, instruments, contracts, securities (in each case as such terms are defined in the Uniform Commercial Code) arising therefrom, all parts of, all accessions to, all replacements for, all products of, all payments of any type in lieu of or in respect of such Equipment, and all documents and general intangibles covering or relating to, any or all of the foregoing; (iii) all cash and cash equivalents representing any security deposits paid to Lender; and (iv) all proceeds of any and all of the foregoing and, to the extent not otherwise included, all payments under insurance (whether or not Lender is the loss payee thereof), or under any indemnity, warranty or guaranty by reason of loss to or otherwise with respect to any of the foregoing Collateral.

| Quantity | Description | Serial Number |
|---|---|---|
| 1 | 2016 Freightliner Cascadia 125SLP | 3AKJGLD56GSGU1007 |

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. 3AKJGLD56GSGU1007 | YEAR 2016 | MAKE FREIGHTLINER | MODEL CASCADIA 125 | BODY STYLE TRUCK | TITLE NO. 18232695048 |
|---|---|---|---|---|---|

**3AKJGLD56GSGU1007**

| DATE ISSUED 08/20/18 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED 07/25/18 USED | TYPE TITLE ORIGINAL |
|---|---|---|---|---|---|

LEGEND(S)

MAILING ADDRESS

MILEAGE NOT REQUIRED

FIRESTONE FINANCIAL LLC
117 KENDRICK ST STE 200
NEEDHAM MA 02494-2728

OWNER(S) NAME AND ADDRESS
HEROES LOGISTICS INC
4629 YACKLEY AVE APT 8
LISLE IL 60532

FIRST LIENHOLDER NAME AND ADDRESS
FIRESTONE FINANCIAL LLC
117 KENDRICK ST STE 200
NEEDHAM MA 02494-2728

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

| Firm Name | By | | Date |
| | Signature of Authorized Agent | |
| Firm Name | By | | Date |
| | Signature of Authorized Agent | |

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

▶ **Federal and State law** requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. **The mileage stated is in excess of its mechanical limits.**
☐ 2. **The odometer reading is not the actual mileage.**
WARNING-ODOMETER DISCREPANCY.

*If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application.*

NO
TENTHS
ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____ Printed Name _____

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

Q3070007

*Jesse White*

JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

---

55627

| MUST BE COMPLETED BY SELLER | DO NOT DETACH UNTIL SOLD **NOTICE OF SALE** | SEE INSTRUCTIONS ON REVERSE |
|---|---|---|

| FREIGHTLINER | 2016 | | 3AKJGLD56GSGU1007 |
| Vehicle Make | Vehicle Year | | Vehicle Identification Number (VIN) |

| Name of Seller (Current Registered Owner) | | Name of Buyer | |

| Complete Address of Seller | | Complete Address of Buyer | |

| City | State | ZIP | City |

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature _____ Printed Name of Seller _____

**EXHIBIT**

Ex. 6

Federal and State law requires ... imprisonment.

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale

Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

VSD 40.24

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.



**FIRESTONE FINANCIAL**
A Berkshire Bank Company

## MASTER UNLIMITED GUARANTY
### (All Guarantors)

MASTER UNLIMITED GUARANTY, dated as of 7-27, 20(8 in favor of FIRESTONE FINANCIAL, LLC, a Massachusetts limited liability company with its principal office at 117 Kendrick Street, Suite 200 Needham, Massachusetts, 02494-2728 ("Lender"). In consideration of Lender's giving, in its discretion from time to time, credit facilities or accommodations to Heroes Logistics, Inc. (together with its successors, the "Borrower"), each of the undersigned (each a "Guarantor"), agrees as follows:

1.     GUARANTY OF PAYMENT AND PERFORMANCE. Each Guarantor, jointly and severally if more than one, hereby guarantees to Lender the full and punctual payment when due (whether at maturity, by acceleration or otherwise), and the performance, of all liabilities, agreements and other obligations of the Borrower to Lender, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired, whether by way of discount, lease, loan or otherwise and whether the Borrower may be liable individually or jointly with others (the "Obligations"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations and not of their collectability only and is in no way conditioned upon any requirement that Lender first attempt to collect any of the Obligations from the Borrower or resort to any security or other means of obtaining their payment. Should the Borrower default in the payment or performance of any of the Obligations, the obligations of each Guarantor hereunder shall become immediately due and payable to Lender, without demand or notice of any nature, all of which are expressly waived by each Guarantor. Payments by a Guarantor hereunder may be required by Lender on any number of occasions.

2.     GUARANTOR'S AGREEMENT TO PAY. Each Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to Lender, on demand, all costs and expenses (including court costs and reasonable attorneys' fees and expenses) incurred or expended by Lender in connection with the Obligations, this Guaranty and the enforcement thereof, together with interest on amounts recoverable under this Guaranty from the time such amounts become due until payment in full, at the rate per annum equal to 18%; provided that if such interest exceeds the maximum amount permitted to be paid under applicable law, then such interest shall be reduced to such maximum permitted amount.

3.     UNLIMITED GUARANTY. The liability of each Guarantor hereunder shall be unlimited.

4.     REPRESENTATIONS AND WARRANTIES. Each Guarantor makes the following representations and warranties which shall survive the execution and delivery of this Guaranty:

a.     If the Guarantor is a corporation, partnership, limited liability company, business trust or other legally recognized entity, the Guarantor (i) is duly organized and validly existing in good standing under the laws of the jurisdiction in which it is organized; (ii) has the power and authority to own its properties and to carry on its business as being conducted on the date hereof; (iii) is duly qualified to transact business and is in good standing in every jurisdiction in which the ownership of property or the nature of the business conducted by it makes such qualification necessary; (iv) has the power and authority to execute, deliver and carry out the terms and provisions of this Guaranty; and (v) has taken all necessary action (including, without limitation, any consent of stockholders, partners, members or beneficiaries required by law, by its charter, by-laws or other organizational agreement or otherwise) to authorize the execution, delivery and performance hereof and the consummation of the transactions contemplated hereby.

b.     The person signing this Guaranty and each of the other loan documents on behalf of the Guarantor has full power and authority to do so. Each of the loan documents to which the Guarantor is a party (i) has been duly executed and delivered by Guarantor, and (ii) constitutes the legal, valid, and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms.

c.     Neither the execution and delivery of this Guaranty, nor the consummation of any of the transactions contemplated hereby nor compliance with any of the terms and provisions hereof will conflict with, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in any violation of, or result in the creation of any lien upon any of the properties or assets of the Guarantor pursuant to its charter, by-laws, organizational documents, or any applicable law, statute, rule, regulation or award of any arbitrator or any agreement, instrument, order, judgment or decree to which the Guarantor is a party or by which it or its properties are subject or may be bound.

d.     Neither the execution and delivery of this Guaranty, nor the consummation of any of the transactions contemplated hereby requires any consent, approval or authorization of, or filing, recording, registration or qualification with, any court or governmental or administrative body or authority.

e.     There are no actions, suits or proceedings pending, or to the best of the Guarantor's knowledge after due inquiry with respect thereto threatened, against or affecting the Guarantor before any court or before any governmental or administrative body which might result in any material adverse change in the business, operations, properties, assets or condition (financial or otherwise) of the Guarantor or in any material liability on the part of the Guarantor.

f.     The Guarantor has, independently and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Guaranty. This Guaranty is not made in reliance on any representation or warranty, express or implied, by Lender concerning the financial condition of the Borrower, the nature, value or extent of any security for the Obligations, or any other matter. The Guarantor warrants that it has full knowledge of the financial condition of the Borrower and agrees that it will continue to be fully cognizant of the Borrower's financial condition until all Obligations are finally paid in full in cash, and Lender has no obligation to advise the Guarantor of any information relating to the Borrower's financial condition or otherwise relating to the Borrower or any Obligation or any security therefor or guaranty thereof.

g.     The Guarantor will receive substantial direct and indirect benefits from the financial accommodations extended by Lender to the Borrower, and the waivers set forth in this Guaranty are knowingly made in contemplation of such benefits. Guarantor hereby waives any defense and/or claim to the effect that Guarantor's obligations hereunder are not supported by consideration

h.     All financial statements of the Guarantor (including any related schedules and notes) furnished to Lender are complete and correct and have been prepared in accordance with generally accepted accounting principles consistently applied. The balance sheets fairly present the financial position of the Guarantor as at the date thereof, and the statements of income, changes in retained earnings, and statements of cash flows fairly present the results of the operations of the Guarantor for the period indicated. There has been no material adverse change in the business, operations, properties or assets or in the condition (financial or otherwise) of the Guarantor since the date of such financial statements.

EXHIBIT

Ex. 7

i.   There are no attachments, levies, executions, assignments for the benefit of creditors, receiverships, conservatorships or voluntary or involuntary proceedings in bankruptcy or pursuant to any other debt or relief laws contemplated by Guarantor or, to the best of Guarantor's knowledge after due inquiry, currently pending in any judicial or administrative proceeding against Guarantor.

j.   All written information supplied or delivered to Lender by Guarantor in connection with the transactions contemplated by this Guaranty and the other loan documents to which Guarantor is a party is materially true, correct, and complete as of the dates specified therein.

k.   Guarantor has filed all federal, state and local tax returns and has paid all of its current obligations before delinquent or has obtained an extension therefor, including all federal, state and local taxes and all other payments required under federal, state or local law.

5.      WAIVERS BY GUARANTOR; LENDER'S FREEDOM TO ACT.  Each Guarantor agrees that the Obligations will be paid and performed strictly in accordance with their respective terms regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto. Each Guarantor waives presentment, demand, protest, notice of acceptance, notice of Obligations incurred, notice of any indulgences or extensions granted to the Borrower or to any other person which may be liable for the Obligations, notice of the occurrence of a default or an event of default under any Obligation, notice of presentment and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshalling of assets of the Borrower, and all suretyship defenses generally. Without limiting the generality of the foregoing, each Guarantor agrees to the provisions of any instrument evidencing, securing or otherwise executed in connection with any Obligation and agrees that the obligations of the Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure of Lender to assert any claim or demand or to enforce any right or remedy against the Borrower; (ii) any extensions or renewals of any Obligation; (iii) any rescissions, waivers, amendments or modifications of any of the terms or provisions of any agreement evidencing, securing or otherwise executed in connection with any Obligation; (iv) the substitution or release of any person primarily or secondarily liable for any Obligation, including any Guarantor hereunder; (v) the adequacy of any rights Lender may have against any collateral or other means of obtaining repayment of the Obligations; (vi) the impairment of any collateral securing the Obligations, including without limitation the failure to perfect or preserve any rights Lender might have in such collateral or the substitution, exchange, surrender, release, loss or destruction of any such collateral; (vii) any change or restructuring of the organizational structure of the Borrower; or (viii) any other act or omission which might in any manner or to any extent vary the risk of any Guarantor or otherwise operate as a release or discharge of any Guarantor, all of which may be done without notice to any Guarantor.

6.      UNENFORCEABILITY OF OBLIGATIONS AGAINST BORROWER.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on each Guarantor to the same extent as if each Guarantor at all times had been the principal obligor on all such Obligations. In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligation shall be immediately due and payable by each Guarantor.

7.      SUBROGATION.  Until the payment and performance in full of all Obligations and any and all obligations of the Borrower to any affiliate of Lender, no Guarantor shall exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation or otherwise, and will not prove any claim in competition with Lender or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; no Guarantor will claim any set-off or counterclaim against the Borrower in respect of any liability of any Guarantor to the Borrower; and each Guarantor waives any benefit of and any right to participate in any collateral which may be held by Lender or any such affiliate.

8.      SUBORDINATION OF OTHER BORROWER DEBT.  The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by each Guarantor is hereby subordinated to the prior payment in full of the Obligations, provided that so long as no default in the payment or performance of the Obligations has occurred and is continuing, or no demand for payment of any of the Obligations has been made that remains unsatisfied, the Borrower may make, and a Guarantor may demand and accept, any scheduled payments of principal of and interest on such subordinated indebtedness in the amounts, at the rates and on the dates specified in such instruments, securities or other writings as shall evidence such subordinated indebtedness. Each Guarantor agrees that after the occurrence of any default in the payment or performance of the Obligations, the Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, any Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by such Guarantor as trustee for Lender and be paid over to Lender on account of the Obligations without affecting in any manner the liability of such Guarantor under the other provisions of this Guaranty.

9.      FURTHER ASSURANCES.  Each Guarantor agrees that such Guarantor will, from time to time at the request of Lender, provide to Lender its most recent audited and unaudited balance sheets and related statements of income and retained earnings and changes in cash flow (prepared on a consolidated basis with the Guarantor's subsidiaries, if any) and such other information relating to the business and affairs of the Guarantor as Lender may reasonably request. Each Guarantor also agrees, upon demand after any change in the condition or affairs (financial or otherwise) of such Guarantor deemed by Lender to be adverse and material, to secure the payment and performance of such Guarantor's obligations hereunder by delivering, assigning or transferring to Lender or granting Lender a security interest in additional collateral of a value and character satisfactory to Lender, and authorizes Lender to file any financing statement deemed by Lender to be necessary or desirable to perfect any security interest granted by such Guarantor to Lender, and as agent for such Guarantor, to sign the name of such Guarantor thereto. Each Guarantor also agrees to do all such things and execute all such documents, including financing statements, as Lender may consider necessary or desirable to give full effect to this Guaranty and to perfect and preserve the rights and powers of Lender hereunder. Each Guarantor also agrees that promptly after such Guarantor obtains knowledge of any default or event or circumstances which with the passage of time or giving of notice will become a default or event of default by the Borrower on any Obligation, or of any material change in the financial position or business of the Borrower, such Guarantor will immediately notify Lender of such default, event, circumstance or change.

10.     TERMINATION; REINSTATEMENT.  This Guaranty shall remain in full force and effect with respect to all Guarantors until Lender is given written notice of a Guarantor's intention to discontinue this Guaranty, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Obligations. No such notice shall be effective unless received and acknowledged by an officer of Lender. No such notice shall affect any rights of Lender with respect to Obligations incurred prior to the receipt of such notice or with respect to Obligations incurred

2

pursuant to any contract or commitment in existence prior to such receipt, and all notes, instruments (negotiable or otherwise) and writings made by or for the account of the Borrower purporting to be dated on or before the date of receipt of such notice, although presented to or accepted by Lender after that date, shall form part of the Obligations. No notice from one Guarantor shall affect the obligations of any other Guarantor hereunder. This Guaranty shall continue to be effective or be reinstated, notwithstanding any such notice, if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by Lender upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

11.     SUCCESSORS AND ASSIGNS.  This Guaranty shall be binding upon each Guarantor, each Guarantor's successors and assigns, and shall inure to the benefit of and be enforceable by Lender and its successors, transferees and assigns; provided, however, that (a) Guarantor shall not assign or otherwise transfer its obligations under this Guaranty and no such purported assignment shall be effective without Lender's prior written consent, which consent may be withheld in Lender's sole and absolute discretion; and (b) no assignment or other transfer by Guarantor of any of its obligations under this Guaranty shall relieve Guarantor of any of its obligations hereunder or thereunder.  Lender may assign or otherwise transfer any agreement or any note held by it evidencing, securing or otherwise executed in connection with the Obligations, or sell participations in any interest therein, to any other person or entity, and such other person or entity shall thereupon become vested, to the extent set forth in the agreement evidencing such assignment, transfer or participation, with all the rights in respect thereof granted to Lender herein.

12.     AMENDMENTS AND WAIVERS.  No amendment nor waiver of any provision of this Guaranty nor consent to any departure by any Guarantor therefrom shall be effective unless the same shall be in writing and signed by Lender.  No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  No course of dealing between Guarantor and Lender shall operate as a waiver of any of Lender's rights under this Guaranty or with respect to any of the Obligations.

13.     NOTICES.  All notices and other communications called for hereunder shall be made in writing and shall be delivered by hand, facsimile or mailed first class mail postage prepaid, in each case addressed as follows: if to a Guarantor, at the address set forth adjacent to the Guarantor's signature hereto, and if to Lender, at 117 Kendrick Street, Suite 200 Needham, Massachusetts, 02494-2728, Attention: President, facsimile no. (617) 332-8032.  All notices shall be deemed delivered two business days after deposit with the United States Postal Service, or if delivered by facsimile, courier or by personal delivery, then notice is deemed delivered upon the date and time of actual receipt or refusal of delivery by the representative's agents and employees.  Any party may designate a different address or person to whom such notices should be sent by giving notice thereof as provided herein, which change of address shall be effective upon receipt.

14.     GOVERNING LAW; CONSENT TO JURISDICTION.  This Guaranty shall be construed as having been made in The Commonwealth of Massachusetts, and each Guarantor agrees that, by entering into this Guaranty, each Guarantor transacted business in Massachusetts.  This Guaranty is intended to take effect as a sealed instrument and shall be governed by, and construed in accordance with, the laws of The Commonwealth of Massachusetts.  Each Guarantor agrees that any suit for the enforcement of this Guaranty may be brought in the courts of The Commonwealth of Massachusetts or any Federal Court sitting therein and consents to the non-exclusive jurisdiction of such court and to service of process in any such suit being made upon the Guarantor by mail at the address specified in the above under "Notices".  Each Guarantor hereby waives any objection that such Guarantor may now or hereafter have to the venue of any such suit or any such court or that such suit was brought in an inconvenient court.

15.     JOINT AND SEVERAL LIABILITY.  All references to the Guarantor in this Guaranty refer to each of the undersigned Guarantors.  Each Guarantor is liable for all of the Obligations of the Borrower, and the liability of the Guarantors is joint and several.

16.     COUNTERPARTS; FACSIMILE EXECUTION.  This Guaranty may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute the Guaranty by signing any such counterpart.  Delivery of an executed counterpart of the Guaranty by facsimile or electronic mail shall be equally as effective as delivery of original executed counterparts of the Guaranty.  Any party delivering an executed counterpart of the Guaranty by facsimile or electronic mail also shall deliver an original executed counterpart, but the failure to so deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of the Guaranty.

17.     **JURY WAIVER.  EACH GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS GUARANTY, ANY RIGHTS OR OBLIGATIONS HEREUNDER, THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY RELATING TO THIS GUARANTY, AND AGREES THAT IT WILL NOT SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, EACH GUARANTOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION REFERRED TO IN THE PRECEDING SENTENCE ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.  THE PROVISIONS OF THIS PARAGRAPH SHALL BE SUBJECT TO NO EXCEPTIONS.  NEITHER LENDER NOR ANY GUARANTOR HAS AGREED WITH OR REPRESENTED TO ANY OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.  In any jurisdiction where the foregoing jury waiver is not enforceable (or to the extent the jury waiver is deemed by any court not be enforceable), including specifically the state of California, the parties agree that any dispute arising out of or related to this Guaranty shall be submitted to arbitration, which will be final and binding.  Any such arbitration will be heard by a single arbitrator and will take place, if the Borrower is headquartered in California, in Los Angeles, California, and, if the Borrower is headquartered elsewhere, the nearest city to the Borrower's headquarters with a population of 250,000 or more. The arbitration shall be carried out in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect.  Discovery in any such proceeding will be limited to statements of fact, copies of relevant documents, and sworn declarations and affidavits, all as determined by the arbitrator in his or her sole discretion.  Judgment may be entered on the arbitrator's award in any court having jurisdiction**

3

18.  MISCELLANEOUS.  This Guaranty constitutes the entire agreement of each Guarantor with respect to the matters set forth herein.  The rights and remedies herein provided are cumulative and not exclusive of any remedies provided by law or any other agreement, and this Guaranty shall be in addition to any other guaranty of the Obligations.  The invalidity or unenforceability of any one or more sections of this Guaranty shall not affect the validity or enforceability of its remaining provisions.  Captions are for the ease of reference only and shall not affect the meaning of the relevant provisions.  The meanings of all defined terms used in this Guaranty shall be equally applicable to the singular and plural forms of the terms defined.

IN WITNESS WHEREOF, each Guarantor has caused this Guaranty to be executed and delivered by its duly authorized officer, as of the date first above stated, as a sealed instrument.

GUARANTOR:

| | 4629 Yackley Ave Apt 8, Lisle, IL 60532 |
| --- | --- |
| Jonce Strumenikovski | Lisle, IL  60532 |

4

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

RECEIVED
IL SECRETARY OF STATE
UNIFORM COMMERCIAL CODE
20180730    1721
$20.00    Electronic

**23607247**                    FS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company          800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
FilingDept@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company

801 Adlai Stevenson Drive

Springfield, IL, 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC 1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Heroes Logistics, Inc. | | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4629 Yackley Ave Apt 8 | Lisle | IL | 60532 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC 1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Firestone Financial, LLC | | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 117 Kendrick Street | Needham | MA | 02494-2728 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All (i) equipment of the Borrower (A) listed below or on any Schedule "A" attached hereto and made a part hereof, (B) such equipment which Borrower has previously granted a security interest to Lender, and (C) such equipment which shall be attached to any Note or other security agreement with Lender and made a part thereof, in each case whether now or hereafter existing, which is now or hereafter owned by Borrower or in which Borrower now has or hereafter acquires rights; (ii) as it relates to such equipment, all fixtures, inventory, goods, accounts, chattel paper, general intangibles, documents, instruments, contracts, securities (in each case as such terms are defined in the Code) arising therefrom, all parts of, all accessions to, all replacements for, all products of, all payments of any type in lieu of or in respect of such equipment, and all documents and general intangibles covering or relating to, any or all of the foregoing; (iii) all cash and cash equivalents representing any security deposits paid to Lender; and (iv) all proceeds of any and all of the foregoing Collateral and, to the extent not otherwise included, all payments under insurance (whether or not Lender is the loss payee thereof), or under any indemnity, warranty or guaranty by reason of loss to or otherwise with respect to any of the foregoing Collateral. (1) 2016 Freightliner Cascadia 125SLP VIN 3AKJGLD56GSGU1007.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee

**8. OPTIONAL FILER REFERENCE DATA:**
[149930264]

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**EXHIBIT**

Ex. 8